## THE CENTRAL RAILWAY COMPANY

### V.

### JOHN C. ALLMON, BY HIS NEXT FRIEND, ETC.

*Street Railways—Collision Between Buggy and Electric Car—Action
Against Electric Railway Company for Damages—Alleged Negligence
of Motor Man—Speed of Car—Impeaching Testimony.*

1.  In an action against an electric street railway company to recover
damages for injuries to plaintiff, received in a collision between a buggy
in which plaintiff was riding and one of defendant's cars, *held*, that
the evidence justified the finding that defendant's servants were guilty
of negligence and that plaintiff was not.

2.  Evidence of statements made by the motor man to witnesses, sub-
sequent to the accident, conflicting with his testimony on the trial, was
admissible as impeaching testimony, for which purpose alone the court
properly admitted it.

3.  Evidence of the distance of the round trip of the car and of its
schedule time was admissible as tending to establish the average speed
of the car, the speed at the time of the accident being a material issue in
the case.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Peoria County; the
Hon. T. M. SHAW, Judge, presiding.

Messrs. KEEP & LOWDEN and STEVENS & HORTON, for appellant.

Messrs. WORTHINGTON, PAGE & BRADY, for appellee.

MR. JUSTICE LACEY. This suit was brought by the appellee, a minor, by his next friend, to recover for injuries sustained by him on account of the negligence of appellant's servant, the motor man of the electric car belonging to it, in so negligently driving the car at so high a rate of speed, that he ran over appellee, who was riding in his buggy drawn by a horse, which became frightened and stopped on the railroad track and was run into by the motor, and also the motor man's negligence in not stopping the car after he saw the danger in which appellee was placed. The injury was severe, the appellee losing a leg, and sustaining other severe injuries. The verdict and judgment was for $5,000. From that judgment this appeal is taken. The verdict is not objected to on the ground that it is excessive, but appellant insists that it is against the weight of the evidence, that the court admitted improper evidence, and that counsel for appellee on the trial made improper remarks before the jury.

We will not take the time and space to go into a general canvass of the evidence to determine the question of whether the jury were justified in finding the verdict it did. The issues in the case were the alleged negligence of the appellant's servant, the motor man, in not putting on the brakes and stopping the car in time to avoid the accident, when in the exercise of reasonable care he had the power so to do after being aware, or by proper care could have known of the dangerous condition of the appellee with reference to being run over by the electric car, and whether or not the car was run at a dangerous rate of speed that prevented it from being stopped in time to have prevented the accident, when it could have been avoided if run at a moderate and safe rate. These were questions for the jury, and if there was evidence upon which the jury could have properly found

the verdict that it did, then the verdict should be sustained, unless some other error of sufficient magnitude has intervened requiring it to be set aside and the judgment reversed. We have examined the evidence with the care that the importance of the case deserves, and while it is quite conflicting and would have justified the jury in finding for the appellant on those issues, we are not prepared to say that it is so manifestly against the weight of the evidence as to require a reversal of the judgment on that account. Like all cases of this nature, where the occurrences attending the accident and immediately preceding, take place in so brief a space of time, not more than a minute or so, it is not strange, witnesses situated at different points should see the occurrences differently and make up different judgments as to time, space and distances. If the horse driven by the appellee and his two companions, also boys, showed no signs of fright while the car was approaching, and the car was being run at a moderate rate of speed, and the horse drawing the buggy became suddenly frightened while the car was close at hand, and jumped in front of it while it was so near that it could not be checked or stopped so as to prevent the collision, then the appellant would be free from fault. The accident occurred while the electric car was proceeding south on Adams street, in the city of Peoria, with its load of passengers, and the appellee with his horse and buggy was proceeding north on the west side of the same street at a point just opposite of the meat market, between the streets of Dodge and Hecox, intersecting Adams street at right angles, a block apart. There was evidence tending to show negligence of appellant, especially that of W. T. Pugh, a hack driver, who was close to the scene of the accident, with his hack filled with passengers, and sworn as a witness on the part of appellee. His evidence was to the effect that the horse of appellee was frightened, and prancing around in the narrow driveway between the street railway track and the gutter on Adams street, south of the approaching car, while the car was a block away, and that the horse was in plain view of the motor man. This evidence tended very

strongly to show, that had the motor man been in the exer-
cise of proper care he would have seen the situation, and
have checked up his car so as to have saved the accident.
Pugh also testified that the car at the time was running at
the rate of fifteen miles per hour, which, if such was the
case, would have rendered it very difficult to stop in time
to save a collision at any short distance. The evidence of
several witnesses went to show that if the car had been run-
ning at a moderate rate of speed of eight to ten miles per
hour, it could be stopped in the width of a street or fifty
feet. The witness Pugh also testified that when he first saw
the appellee's horse on the street car track, the car was
about forty-eight feet from him, and that it did not slack
up any till after the horse was struck. The witness Pugh
says "when the horse was on the track the car came onto
him full tilt, and they made no stop or pretense to try to
stop." There were several other witnesses offered by appel-
lee who corroborated Pugh as to the speed of the car at
the time of the accident. The testimony of Pugh was cor-
roborated by that of appellee as well as other witnesses who
testified in his behalf. Daniel Allmon, Jr., and Ed. Gurden-
berg, who were in the buggy with him, testify that when
the horse first got onto the car track, the car was at the
corner of Hecox and Adams street, which would, according
to the other testimony, have given the motor man time to
have stopped the car before striking appellee's buggy, if it
had been proceeding at a moderate rate.

On the part of the appellant the evidence of a number of
witnesses tended to prove that the car was proceeding at a
moderate rate, not to exceed eight to ten miles per hour, and
that appellee's horse, when the car was within a few feet of
the place where the accident occurred, suddenly became
frightened, and jumped on the track in front of the approach-
ing car, and that the motor man, Barnhause, could not, had
he used all the means in his power, have stopped the car in
time to prevent the collision. The evidence was conflicting,
and it was the province of the jury to weigh it and to find
in accordance with its preponderance; and its verdict, as

has been often held by this and the Supreme Court, will not be disturbed unless manifestly and palpably against the weight of the evidence. We are not able to say that the verdict sustains such a relation to the evidence in this case.

The appellant makes objection to the allowance by the court of the impeaching evidence, given by some of appellee's witnesses, going to show that Barnhause, the motor man, had said in presence of the impeaching witnesses, Miss Katie Allmon, Mary Allmon and Patrick Powell, the day or the second day after the accident, "that the boys were not to blame, they were coming on a walk. The fact of the matter is, I neglected my own business and forgot to put on the brakes onto my car; * * * my whole attention was on the horse and boys, and furthermore, I shall never put my feet on any of those cars again to work, or do anything else on those cars;" and further, that at the same time and place he could have stopped the cars if he had not lost his head. The attorneys for the appellant objected to the giving of the said evidence, testified to by the impeaching witnesses, on the ground it was hearsay, and the admissions of the agent as to acts of negligence on his part, made after the fact, or the occurrence of the accident. We think the evidence was proper by way of impeachment, for which purpose alone the court below allowed it. The substance of Barnhause's evidence was that the danger was not discovered by him in time to have prevented the accident, and under the circumstances could not have been so discovered, and that there was nothing possible he could have done that he did not do as soon as he saw the horse was frightened, to stop the car. This evidence was very material to the issue in the case, and was directly contradictory of the evidence given by Barnhause, and, if true, would directly impeach his evidence. The evidence may have exercised a prejudicial influence on the jury outside of its impeaching force, though we think that could scarcely have been so, as the court expressly told the jury that it was admitted only as impeaching evidence and not for any other purpose; but even if it did, we can see no way to avoid admitting it, as that class of

evidence, under the well known rules of the law, is impeaching evidence, and proper.

The complaint, also, that counsel for appellee made improper use of this evidence in argument, to establish by it the fact of appellant's negligence, is not, as we think, well taken. The attorney in the hearing of the jury disclaimed such intention, and we think that was sufficient. It is also objected that the court erred in admitting evidence as to the distance of the round trip on Adams street, and of the regular schedule time. This would tend to show how fast the train would have to run to make the time after taking out usual stoppages, and would throw some light on the average speed of the train, and have a tendency to show how fast the train was running at the time of the accident. Of course it would not be positive, but a circumstance tending to establish the speed, to be taken into account with all the other evidence in the case. The admission of the evidence of Daniel Allmon, in which he was allowed to testify that appellee could not have gotten out of the buggy at the time, from the time the horse commenced to plunge and rear until the car struck the horse, is objected to. While this is an opinion of a witness in one sense, it was a question of fact that any one could swear to without being an expert. It is not all questions of mere opinion that will be excluded. If, however, it was error, we think it could not have damaged appellant's case, as it is quite clear appellee could not have gotten out. The question does not involve a question of negligence in not getting out. For even if he could have gotten out it would still have been a question for a jury whether a reasonably prudent person would not have refused to make the jump under all the circumstances; whether the danger in making such an attempt would not have appeared greater to such a person than to stay in the buggy. We see no material error in the record; the judgment of the court below is therefore affirmed.

*Judgment affirmed.*